**Greenspan v. Shifrin**

24

*Carole F. Kafrissen,* for plaintiffs.
*Alan J. Dion,* for defendant.

ACKERMAN, *J.,* February 12, 1997—After a jury trial, the jury rendered a verdict in favor of the defendant, Nathan Shifrin, and against the plaintiffs, Donald Greenspan and Gayle Greenspan, his wife.

The jury was directed to find that the defendant, Nathan Shifrin, was negligent under the facts of the case. However, the jury specifically found that the negligence of the defendant, Nathan Shifrin, was not a substantial factor in bringing "about harm (injuries) to the plaintiff."

Plaintiffs filed post-trial motions seeking a new trial solely on the issue of plaintiffs' damages, or in the alternative, requesting an entire new trial (other arguments raised in post-trial motions were not pursued in plaintiffs' memorandum or during argument and are waived), essentially contending that:

(1) The evidence overwhelmingly demonstrates that defendant's negligence was a substantial factor in causing plaintiff's harm.

(2) Defense counsel's cross-examination on the issue of plaintiffs' claims to Donald Greenspan's workers' compensation insurance carrier requires the award of a new trial to the plaintiffs.

After hearing, argument and review of both parties' memoranda, this court denied plaintiffs' post-trial motions and entered judgment on the jury verdict; and an appeal ensued.

## I. *The Evidence Overwhelmingly Demonstrates That Defendant's Negligence Was a Substantial Factor in Causing Plaintiff's Harm*

The totality of the testimony of defendant's medical expert, Richard Katz M.D., in his videotape deposition illustrates that he did *not* concede that plaintiff suffered an injury.

"Q. Now assuming for the sake of argument that this test was indicated, at all, did the test itself find

anything wrong with Mr. Greenspan (indicating the MRI test in August 1992).

"A. The test shows what we call a degenerative change, some loss of water signal in the lower lumbar discs, some minimal bulging in that territory, which are the kind of—again, the word is unfortunate, because it suggests something horrible, it's not, degenerative, which simply means wear and tear, loss of water content of a disc, some bony involvement, some ballooning of the disc, which is seen in a 50-year-old in probably 50-70 percent of the population.

"And the fact that it is nowhere near any nerve structures, indicates the absence of any relation to pain, because there is no mechanism of pain. There is no description either from the formal report, of what we call pathologic disc herniation, disc material pushing on nerve root structures. And clearly the film itself, as I reviewed the pictures, shows no disc herniation and no nerve root compression.

"So, it's kind of wear and tear change we see in people in the sixth decade, people over 50 years old." Video deposition of Richard Katz M.D., April 11, 1996, pp. 23-24.

Dr. Soss, plaintiffs' expert, also supported the above premise:

"Q. Would I be correct that there never was an MRI study of Mr. Greenspan's spine before the accident of February 21, 1991?

"A. Not that I ordered.

"Q. Without an MRI showing what his spine looked like before February 21, 1991, you can't say with certainty, even reasonable medical certainty, that he didn't already have that small tiny bulging disc in his low back before the accident; isn't that right?

"A. That's right.

"Q. You can't say that he didn't have any small bulging discs in his neck before the accident, can you?

"A. No, I can't.

"Q. There is no scientific way of telling without a prior study is there?

"A. Not at all." (N.T. 2.113)

With regard to the above statement, the jury had ample reason to assume that the plaintiff's contention that the bulging disc was caused by the accident, was erroneous and that the plaintiff had the bulging disc from normal wear and tear. Therefore, the jury could easily conclude that the plaintiff's complaints of pain did not arise from the accident at issue. If plaintiff's counsel and physicians were attempting to say that this bulge was caused by the accident and that the bulge was the cause of his pain, the jury had ample evidence with which to disbelieve those contentions. Dr. Katz further testified at page 24 of his video deposition: "So there's a very mild degenerative change, a wear and tear chronic type change. No disc herniation, no compression of nerve root structures, *no entity in the films which would explain pain.*" (emphasis added)

Dr. Katz repeatedly during his testimony refuted the causal connection between the findings of plaintiff's physicians and the 1991 accident. See Dr. Katz's testimony at pp. 30, 32 and 35-36. Finally, the plaintiff's own attorney, in cross-examination of Dr. Katz, solicited the refutation of plaintiff's own theory that there was an admission of an initial injury.

"Q. And you don't deny even that he injured his neck and his back in this incident, isn't that correct?

"A. No, the only reservation would be what do you mean by injury? He complained of pain. At no time

is there any indication of tissue injury, based on examination and imaging studies. But he certainly complained of pain afterwards, yes." Videotape deposition of Dr. Katz, p. 77.

Based on Dr. Katz's testimony combined with credibility of the plaintiff, the jury had every right to conclude that Mr. Greenspan's complaints of pain had origin in events and/or motives other than the February 21, 1991 accident.

Plaintiffs' memorandum of law relies largely on the recent case of *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). A reading of the body of the *Neison* case shows that the facts of that case are completely different from the case at issue. For instance, *Neison* says:

"The accident caused Ms. Neison's head to shatter the rear window of the car. . . . The impact produced trauma in the form of a large lump on the back of Neison's head. . . . As a result of the collision, the rear end of Ms. Neison's car had been 'wiped out' and the car looked like 'an accordion.' . . . Her car was struck with such force that the glasses which Neison was wearing prior to the accident were found by a volunteer fireman on the trunk of the vehicle. . . . In fact, the force of the collision caused the trunk to crack and split. . . . The record also shows that Ms. Neison went immediately to the hospital for treatment of the head injury. . . . She returned two days later complaining of neck and shoulder pain, and was told that the pain was a natural result of the type of injury that she had sustained." *Id.* at 521-22, 653 A.2d at 637. Without quoting the entire paragraph, it goes on to talk about testimony as to herniated disc and fibromyalgia, etc.

The defendant's medical expert in *Neison,* Dr. Mitchell, unequivocally agreed that Neison had sus-

tained "a sprained neck and shoulder blade sprain" and that healing "usually takes three to five months." *Id.* at 519, 653 A.2d at 636.

In the instant case, the testimony was quite different. Photographs of the vehicles, exhibited to the jury, showed a very minor "fender bender" type accident. (N.T. 2.166-2.167.) The accident involved in this case was so minor that it was never reported to the police. (N.T. 2.167.) Unlike *Neison,* Mr. Greenspan drove his truck away from the scene of the accident, reported no injury at the scene and did not go to the hospital until hours later, and he got to the hospital by driving his own vehicle, not by ambulance. (N.T. 2.197-2.198.)

Another case cited by plaintiffs' counsel, *Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995), is also distinguishable from the case at hand. In that case, defendant's expert agreed that the plaintiff's "lower back problems were reasonably related to the accident." In the instant case, as quoted above, it is clearly seen that defendant's expert, Dr. Katz, did not agree that any of the plaintiff's "problems" were related to the accident but only that the plaintiff complained of pain after the accident. Dr. Katz opined that he could find nothing in the records to explain the plaintiff's subjective complaints of pain, and Dr. Katz never testified that Mr. Greenspan's complaints of pain were reasonably related to the accident involved.

While Dr. Katz, in his videotape deposition, at other points appeared to concede that the plaintiff had a soft tissue injury related to the February 1991 event (videotape deposition, pp. 15, 16, 22, 27), a complete reading of the deposition leaves open to the jury the question of whether the accident brought about injury to the plaintiff.

The case of *Rozanc v. Urbany,* 444 Pa. Super. 645, 664 A.2d 619 (1995) is a matter in which the jury found that the defendant's negligence was not a factor in bringing about the plaintiff's harm. However, in the *Rozanc* case, defendant's doctor testified, "Yes, I don't have any doubt that she had an injury. And based upon what her symptoms were, it sounded like a strain of the muscles and ligaments of her neck." *Id.* at 648, 664 A.2d at 620. In the instant case, Dr. Katz made no such unequivocal admission. In *Rozanc,* the court clearly opined that the trial judge felt that a new trial was warranted and the appellate court would not interfere with the trial court's discretion in that regard, citing *Neison, supra.*

The language of the Superior Court in the case of *Holland v. Zelnick,* 329 Pa. Super. 469, 478 A.2d 885 (1984) is of value and has obvious application to this case:

"Plaintiff argues that because defendant's expert medical witness admitted that a collision from the rear can cause soft tissue injury to the cervical area and that plaintiff might very well have suffered such an injury that the jury, having found defendant negligent, was required to award her something. The very same claim was made and rejected in *Brodhead [v. Brentwood Ornamental Iron Co. Inc.,* 435 Pa. 7, 255 A.2d 120 (1969)]. The issues as to whether plaintiff was really suffering any pain and whether any such pain was caused by defendant's conduct was for the jury. The jury was not required to award plaintiff any amount as it obviously believed that any injury plaintiff suffered in the accident was insignificant. In *Surgent v. Stein,* 280 Pa. Super. 142, 421 A.2d 445 (1980), we held that where a plaintiff's injuries are slight and her medical bills are paid in full by her no-fault carrier, the jury has no duty

to reimburse her for them. The jury's verdict in the instant case was proper and it had no duty to award plaintiff damages." *Id.* at 475-76, 478 A.2d at 888.

## II. *Defense Counsel's Cross-Examination on the Issue of Plaintiffs' Claim to Donald Greenspan's Workers' Compensation Insurance Carrier Requires the Award of a New Trial to the Plaintiffs*

Plaintiffs suggest that the Collateral Source Rule was violated by the cross-examination of defense counsel relating to Donald Greenspan's workers' compensation claim. This is not the case.

Defendant's counsel discovered information within the files of plaintiff's treating physician to the effect that the plaintiff suffered a work-related accident in 1994. This accident and the treatment for the accident would have been immaterial to defendant's defense in the instant case, but for the fact that the plaintiff decided to claim that the incident in 1994 related back to the 1991 automobile accident and that all of the treatment given by Dr. Murray Soss was related to and caused by the 1991 automobile accident. Defense counsel rightfully, during the course of cross-examination of Dr. Soss, pointed out that the doctor had directed reports and billing statements to parties unrelated to the instant case which reflected that the treatments at issue in 1994 were, in fact, caused by a work-related incident and not by the motor vehicle accident of 1991. The entire sequence of cross-examination takes place in the record at N.T. 2.115-2.127. By reviewing the totality of cross-examination, it is easily seen that defense counsel's intent was to impress upon the jury that Dr. Soss wrote reports attributing Mr. Greenspan's neck and back pain from 1991 up until the date of trial to the automobile accident of 1991 and, yet, the same Dr. Soss wrote reports in 1994 indicating the opinion that Mr. Green-

span's then neck and back pain was because of a separate incident. The purpose of defense counsel was not to imply to the jury that plaintiff was attempting a double recovery. The intent was to show that Dr. Soss, in this case, blamed Mr. Greenspan's pain in 1994 on the automobile accident while he wrote reports to others blaming a different incident for Mr. Greenspan's then pain. The cross-examination was an effective assault on Dr. Soss' record-keeping practices and on his credibility with regard to his opinions on causation. Had Mr. Greenspan not attempted to insert his 1994 pain and limitations into this case, the issue would have been irrelevant. To now try to make this a collateral source issue, is inappropriate.

During the course of objections to this line of testimony, this court on occasion sustained certain objections and overruled others.

Plaintiffs' counsel moved for a mistrial, but this court denied such motion; and while the court did not instruct the jury to ignore defense counsel's references to workers' compensation claims, no such instruction was requested by plaintiffs' counsel.

This court believes that the verdict by the jury was in no way tainted by this issue.